# 12-4724-cr

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ZAREIN AHMEDZAY, AKA OMAR, FERID IMAM, AKA YOUSEF, AKA FARID IMAM,
ABID NASEER, TARIQ UR REHMAN, AKA TARIQ UL-RAHMAN, FNU LNU,
AKA AHMAD, AKA ZAHID, ADNAN EL SHUKRIJUMAH, AKA HAMAD,

*Defendants,*

*and*

ADIS MEDUNJANIN, MOHAMMED,

*Defendant-Appellant.*

———————————

*On Appeal from the United States District Court*
*for the Eastern District of New York (Brooklyn)*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

Robert C. Gottlieb
Justin Heinrich
GOTTLIEB & GORDON
Stephanie M. Carvlin
LAW OFFICE OF STEPHANIE CARVLIN
*Attorneys for Defendant-Appellant*
111 Broadway, Suite 701
New York, New York 10006
212-566-7766

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................... ii

**PRELIMINARY STATEMENT** ..................................... 2

**ARGUMENT** ................................................. 2

**POINT ONE**

**A DEFENDANT MAY ANTICIPATORILY INVOKE HIS RIGHTS UNDER MIRANDA V. ARIZONA, AND MR. MEDUNJANIN DID SO** ..... 2

    1. The United States Supreme Court Has Not Held That A Defendant May Not Anticipatorily Invoke His Miranda Rights ................................. 2

    2. Mr. Medunjanin Did Invoke his Miranda Right to Counsel ........................................... 5

    3. Mr. Medunjanin Did Not Reinitiate Contact With Law Enforcement By Calling 911 .................... 7

**POINT TWO**

**THE GOVERNMENT DID INTERFERE WITH MR. MEDUNJANIN'S RIGHT TO COUNSEL AND BY SO DOING VIOLATED HIS RIGHT TO SUBSTANTIVE DUE PROCESS** ............................... 8

**POINT THREE**

**THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING MR. MEDUNJANIN'S REQUEST TO CALL ASSISTANT UNITED STATES ATTORNEY KNOX AS A WITNESS AT THE SUPRESSION HEARING** ...................................... 14

**CONCLUSION** ......................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Statutes</u>**

28 U.S.C. §2254(d)(1) ...................................... 3

**<u>Cases</u>**

<u>Arizona v. Roberson</u>,
     486 U.S. 675 (1988) ................................ 4-5

<u>Bobby v. Dixon</u>,
     132 S.Ct. 26 (2010) ............................... 2-3

<u>Claudio v. Scully</u>,
     982 F.2d 798 (2d Cir. 1992) ........................ 16

<u>Davis v. United States</u>,
     512 U.S. 452 (1994) ............................... 5-6

<u>Edwards v. Arizona</u>,
     451 U.S. 477 (1981) ......................... *in passim*

<u>Miranda v. Arizona</u>,
     384 U.S. 436 (1966) ......................... *in passim*

<u>Salinas v. Texas</u>,
     570 U.S. ---, 133 S. Ct. 2174 (2013) ................. 4

<u>United States v. Caming</u>,
     968 F.2d 232 (2d Cir. 1992) ........................ 16

<u>United States v. Koerber</u>,
     No. 2:09-CR-00302, 2013 WL 4434215
     (D. Utah Aug. 15, 2013) ............................ 17

<u>United States v. Miller</u>,
     116 F.3d 641 (2d Cir. 1997)… ....................... 7

<u>United States v. Scopo</u>,
     861 F.2d 339 (2d Cir. 1998) ........................ 17

<u>United States v. Stein</u>,
     435 F.Supp.2d 330 (S.D.N.Y. 2006) .............. 13, 17

---
---

**UNITED STATES COURT OF APPEALS**
**FOR THE**
**SECOND CIRCUIT**

————————————————————

12-4724-cr

———————————————————————————————

United States of America,

Appellee,

v.

ZAREIN AHMEDZAY, AKA OMAR; FERID IMAM, AKA
YOUSEF; AKA FARID IMAN; ABID NASEER; TARIQ UR
REHMAN, AKA TARIQ UL-RAHMAN; FNU, LNU, AKA
AHMAD, AKA ZAHID; ADNAN EL SHUKRIJUMAH, AKA
HAMAD.

Defendants.

ADIS MEDUNJANIN, AKA MOHAMMED,

Defendant-Appellant.

———————————————————————————————

ON APPEAL FROM A JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

———————————————————————————————

**REPLY BRIEF FOR THE APPELLANT ADIS MEDUNJANIN**

———————————————————————————————

## PRELIMINARY STATEMENT

Mr. Medunjanin's principal brief in this appeal was filed on July 22, 2013. The government filed its responding brief on November 1, 2013.[1] This Reply is submitted to address some of the arguments the government raised in its response.[2]

## ARGUMENT

### POINT ONE

### A DEFENDANT MAY ANTICIPATORILY INVOKE HIS RIGHT UNDER MIRANDA V. ARIZONA, AND MR. MEDUNJANIN DID SO

1. The United States Supreme Court Has Not Held That A Defendant May Not Anticipatorily Invoke His Miranda Rights

(Replying to Government's Point One II. B. 1)

The government asserts that in Bobby v. Dixon, 132 S.Ct. 26 (2010), the United States Supreme Court held that a defendant may not invoke his Miranda rights until he is in custody. (Government's Response at 34-35.) The government is incorrect.

Dixon was convicted in state court in Ohio of murder based in part on his confession. On appeal, he argued that his rights under Edwards v. Arizona, 451 U.S. 477 (1981),

---

[1] This Court extended the deadline for filing this Reply to December 3, 2013.
[2] By not addressing every issue the government raised in its response, Mr. Medunjanin does not intend to abandon any of the claims he asserted in his principal brief.

had been violated because the police subjected him to custodial interrogation after he had invoked his right to counsel before he was in custody. The Ohio Supreme Court found no constitutional violation in the admission of the confession.

After receiving no relief through direct appeal, Dixon brought an action in federal court pursuant to 28 U.S.C. §2254. The Sixth Circuit accepted Dixon's <u>Edwards</u> argument, and the Supreme Court granted <u>certiorari</u>. Thus the procedural posture of the case was that the Supreme Court was reviewing the granting of an application for a writ of habeas corpus pursuant to §2254. A federal court is empowered to grant relief under 28 U.S.C. §2254 only if the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, <u>as determined by the</u> <u>Supreme Court of the United States</u>." 28 U.S.C. §2254(d)(1)(emphasis added).

It was in this context that the Supreme Court used the language the government relies on: "[T]his Court has never held that a person can invoke his <u>Miranda</u> rights anticipatorily, in a context other than 'custodial interrogation.'" <u>Dixon</u>, 132 S.Ct. at 29 (citation omitted). In so stating, the Supreme Court did not hold, as the

3

government argues, that a person could not invoke his
Miranda rights prior to custodial interrogation. Rather,
the Supreme Court meant exactly what it said: that it had
never held that a person could anticipatorily invoke his
Miranda rights. Thus, there was no clearly established
Federal law as determined by the United States Supreme
Court that the Ohio Supreme Court had unreasonably applied.

The United States Supreme Court's decision in Salinas v.
Texas, 570 U.S. ---, 133 S. Ct. 2174 (2013), issued only
two years after Dixon, supports this analysis of the Dixon
holding. The question in Salinas was whether the Texas
state court had violated Salina's Fifth Amendment privilege
against self-incrimination by permitting the prosecution to
comment on his pre-custodial silence as part of its case in
chief. The Supreme Court found no error in the state's
reliance on Salina's silence because he had failed to
invoke his Miranda rights in response to non-custodial
police questioning. Thus, Salinas supports the proposition
that a defendant may invoke his Miranda rights before he is
in custody, and by so doing trigger Edwards protection once
custody commences.

Arizona v. Roberson, 486 U.S. 675 (1988), also
supports this conclusion. In Roberson, the Supreme Court
held that if a suspect invokes his Miranda right to counsel

4

regarding one offense he may not be approached regarding *any* offense unless counsel is present. In other words, a defendant who invokes his Miranda rights when subjected to custodial interrogation on offense A, anticipatorily invokes his Miranda rights as to future custodial interrogation on offense B, C or D. The government argues that Roberson "offers little help to Medunjanin because it reaffirms that a defendant may invoke Miranda only when in custody." (Government Response at 36.) Roberson does not hold or reaffirm or indicate that a defendant may invoke his Miranda rights only when in custody. Rather it stands for two propositions, both of which support Mr. Medunjanin's argument: 1) A defendant who exercises his Fifth Amendment (Miranda) right not to answer questions without an attorney being present on one charge anticipatorily invokes his Miranda right to counsel on future charges; 2) Miranda protection applies only when a defendant is subject custodial interrogation. Mr. Medunjanin was subject to custodial interrogation.

 2. Mr. Medunjanin Did Invoke His Miranda Right to Counsel

(Replying to Government's Point One II. B. 2.)

Relying on Davis v. United States, 512 U.S. 452 (1994), and its progeny, the government argues that Mr.

5

Medunjanin did not invoke his right to counsel because he did not make an unequivocal statement to the effect that he wanted to speak to his attorney. (Government's Response at 38-39.) <u>Davis</u> stands for the entirely reasonable proposition that the police shouldn't have to guess whether a defendant wants the protection of counsel. However, all that <u>Davis</u> requires is that a defendant make his desire to have counsel present sufficiently clear that "a reasonable police officer" would understand that the defendant is exercising his option to deal with law enforcement through counsel. <u>Davis</u>, 512 U.S. at 459. Magic words need not be spoken to trigger <u>Edwards</u> protection.

It is completely clear that the members of the JTTF who questioned Mr. Medunjanin on January 7, 2010, knew that he wanted them to approach him through counsel. Agent Farbod Azad admitted this during the suppression hearing. He testified that he made no attempt to interview Mr. Medunjanin between September 25, 2009, and January 7, 2010, because he knew that Mr. Medunjanin was represented and, therefore, that efforts to communicate with him would not be fruitful. (A280-81.)

The events of January 7, 2010, only reinforced this message. When Agent Azad and Detective Maysonet came to execute the search warrant at the Medunjanin home on

January 7, Mr. Medunjanin immediately asked them whether they had contacted his attorney. When they left his home, Mr. Medunjanin immediately called his attorney, Robert Gottlieb, as the agents had instructed him he had a right to do. Mr. Gottlieb then called Agent Azad and Assistant United States Attorney Jeffery Knox. Agent Azad and Mr. Knox knew that counsel didn't want them to question Mr. Medunjanin.

Mr. Medunjanin did enough to make clear to law enforcement that he was invoking his right to counsel.

3. Mr. Medunjanin Did Not Reinitiate Contact With Law Enforcement By Calling 911

(Replying to Government's Point One II. B. 3.)

The government claims that Mr. Medunjanin "initiated contact" with law enforcement by calling 911 on January 7, 2010, before he crashed his car, Therefore, the government argues, even if Mr. Medunjanin did invoke his right to counsel, Edwards did not bar law enforcement from questioning him later at the hospital. (Government's Response at 40.) This argument is entirely meritless.

Mr. Medunjanin's call to 911 cannot withstand the tortured interpretation the government attempts to impose on it. Mr. Medunjanin did not call 911 to engage in "further communication, exchanges or conversation with the

police." <u>United States v. Miller</u>, 116 F.3d 641, 680 (2d Cir. 1997). Rather, he called to make a statement – in Arabic: "We love death more than you love life. *There is no God but Allah and Muhammad is His messenger*." (A1396) (italicized language originally in Arabic). Indeed, the government's theory of prosecution at trial was that the car crash itself was Mr. Medunjanin's "final act of Jihad." Mr. Medunjanin called 911 to make the significance of the act clear and thereby ensure that it was not mistaken for "some random car accident." (A3448.) By so doing, Mr. Medunjanin did not indicate a desire to waive his previously invoked right to counsel.

## POINT TWO

### THE GOVERNMENT DID INTERFERE WITH MR. MEDUNJANIN'S RIGHT TO COUNSEL AND BY SO DOING VIOLATED SUBSTANTIVE DUE PROCESS

(Replying to Government's Point Two I.)

The government argues that law enforcement conduct in this case did not "shock the conscience" and therefore was not sufficiently egregious to violate Mr. Medunjanin's right to substantive due process. (Government's Response at 55-59.) Admittedly the showing a defendant must make to establish a violation of substantive due process is substantial. That standard is amply met in this case.

Law enforcement engaged in a pervasive and on-going pattern of conduct designed to undermine Mr. Medunjanin's decision to hire counsel and to deal with the government only through counsel. After Mr. Medunjanin retained counsel in September, 2009, law enforcement stopped having direct contact with Mr. Medunjanin – because he had an attorney. (A280-81.) Nevertheless, members of the JTTF approached Mr. Medunjanin's family on at least four occasions – September 28, October 1, October 4, and October 8, 2009. The purpose in doing so, as Agent Azad admitted, was to try to get Mr. Medunjanin's family to persuade him to get rid of his attorney and speak to the government directly. Agents asked Mr. Medunjanin's father why he would want to waste his money on counsel. (A840.) Other members of the JTTF told Mr. Medunjanin's mother that they would like to "help" but they couldn't because her son had an attorney. (A843.) Law enforcement personnel told Mr. Medunjanin's father that everything would work out fine if his son just told them the truth. (A414, A641.)

This approach did not work. Mr. Medunjanin did not get rid of his attorney.

In January of 2010, Agents Azad and Detective Maysonet tried a more direct approach. On January 7, 2010, they executed a search warrant at Mr. Medunjanin's home for his

9

passport. Of course, they could easily have called Mr.
Medunjanin's attorney – Agent Azad knew counsel's name and
had his contact information – to arrange to have the
passport delivered to the JTTF. The reason they chose not
to do so is clear. The agents used the excuse of executing
the warrant to try to rattle Mr. Medunjanin in hopes that
he would make a statement. After obtaining the passports,
the agents presented Mr. Medunjanin with a receipt for what
they had seized. Detective Maysonet then "asked" whether
Mr. Medunjanin signed the property receipt using his true
name or the name "Mohammad." At the suppression hearing,
the agents admitted that they did this specifically to let
Mr. Medunjanin to know that they knew "of his activities in
Pakistan." (A287, A648.)

　　　After the agents left the Medunjanin home, Mr.
Medunjanin spoke with his counsel, Mr. Gottlieb.  Mr.
Gottlieb called Agent Azad, who confirmed that the search
warrant had been executed and instructed Mr. Gottlieb to
direct any further questions to the assigned Assistant
United States Attorney, Jeffrey Knox. (GA03.) Mr. Gottlieb
called Mr. Knox and left a message asking for information
about the search warrant and reaffirming that he
represented Mr. Medunjanin. (GA03). Agent Azad admitted

that he knew that Mr. Gottlieb did not want him to question Mr. Medunjanin. (A389.)

Soon thereafter, Mr. Medunjanin crashed his car, and law enforcement sensed another opportunity to try to question him without counsel being present. Before going to the hospital where Mr. Medunjanin was be treated, Agent Azad spoke with Assistant U.S. Attorney Knox and discussed how to handle any future interrogation of Mr. Medunjanin, notwithstanding Mr. Knox's earlier promise to Mr. Gottlieb that no such interrogation would take place unless Mr. Gottlieb were present.[3] (A376-78.) Armed with a plan on how to proceed, Agent Azad and the other agents approached Mr. Medunjanin. They told Mr. Medunjanin that they knew that he was represented by counsel, but they still wanted to talk to him.

A conversation that Agent Azad estimated lasted 15 minutes then took place <u>before</u> Agent Azad administered

---

[3]The government makes little of this commitment in its responding brief, arguing that there "can be no credible claim that such an agreement was understood to endure in perpetuity, including after Medunjanin's subsequent attempt to commit another act of terrorism within the United States." (Government's Response at 57.) It is an odd argument, at best, and one that this Court should easily reject, that defense counsel cannot reasonably rely on a promise made by an Assistant United States Attorney about how a case will be prosecuted, and, in particular, assurances from the government that his client will not be questioned outside the presence of counsel.

Miranda warnings. (A296.) Detective Murphy used that pre-
Miranda time to try to manipulate Mr. Medunjanin into
waiving his right to counsel. Detective Murphy sought to
establish a rapport with Mr. Medunjanin. The detective said
that he was a father. He would want his children to tell
the FBI the truth if they were ever in Mr. Medunjanin's
position. (A679.) Detective Murphy turned the pressure up.
He told Mr. Medunjanin that if he should tell the truth if
he wanted to "help" his parents.

Also during this conversation, the agents discussed
the expense having an attorney entailed. Regardless of who
raised this issue, at a minimum the officers "agreed" with
Mr. Medunjanin that his attorney was too expensive. (A303,
A401, A487, A681-82.) While decrying the cost of counsel,
they did not contemporaneously advise Mr. Medunjanin that,
of course, he had the right to an assigned attorney if he
could not afford to keep his retained counsel.

After learning that Mr. Medunjanin had been in a car
accident, Mr. Gottlieb and his associate vigorously
attempted to locate Mr. Medunjanin and contact law
enforcement to prevent them from questioning Mr. Medunjanin
without counsel being present. Their efforts continued
throughout the night and into the following morning. (GA03-
05.) Mr. Knox did not return Mr. Gottlieb's calls until the

12

next day – January 8, 2010. Mr. Knox then told Mr. Gottlieb that Mr. Medunjanin purportedly no longer wanted Mr. Gottlieb to serve as his attorney. Mr. Knox said he would seek to have alternate counsel assigned. He <u>repeatedly refused to tell Mr. Gottlieb where Mr. Medunjanin was being held</u>, so Mr. Gottlieb could not meet with his client. (GA05-06.)

The government argues that somehow this conduct – repeated attempts by law enforcement to undermine a defendant's choice to deal with the government though counsel he had <u>already retained</u> – is somehow less egregious than the conduct that was condemned in <u>United States v. Stein</u>, 435 F.Supp.2d 330 (S.D.N.Y. 2006): efforts by the government to pressure a third party into refusing to pay for a defendant's counsel of choice. (Government's Response at 57-58.) The government does not say why what happened in this case shocks the conscience any less. Nor could the government make a persuasive argument to that effect. What did occur in this case was worse than in <u>Stein</u>. Mr. Medunjanin did have an attorney. The government knew that. Nevertheless, the government tried over and over to make an end run around counsel. The government promised not to question Mr. Medunjanin unless counsel was present. The government violated that promise.

13

Mr. Medunjanin's right to substantive due process was violated.

**POINT THREE**

**THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING MR. MEDUNJANIN'S REQUEST TO CALL ASSISTANT UNITED STATES ATTORNEY KNOX AS A WITNESS AT THE SUPRESSION HEARING**

(Replying to Government's Point Three)

Assistant United States Attorney Jeffery Knox was a critical witness for the defense at the suppression hearing. He was in possession of relevant and material facts on the issue related to suppression, including whether the government purposefully violated Mr. Medunjanin's rights under the Fifth and Sixth Amendments. Accordingly, the District Court abused its discretion in denying Mr. Medunjanin's request to call Mr. Knox as a witness at the hearing. The arguments the government now raises in its Responding Brief are without merit, and the authorities it cites are inapposite.

The government completely ignores the relevance and materiality of Mr. Knox's testimony as it pertains to the government's intrusion into the attorney-client relationship between Mr. Medunjanin and his counsel, Mr. Gottlieb, and, instead, focuses solely on the impact that Mr. Knox's testimony would have had with respect to Mr. Medunjanin's purported Miranda waiver. (Government Response

14

at 64-65.) However, as set forth in Mr. Medunjanin's opening brief, one of his <u>central</u> arguments in support of his motion to suppress was that the government continually interfered with the attorney-client relationship. (Defendant's Brief at 67.) Mr. Knox could have provided relevant, material and noncumulative testimony regarding what the government did or did not do to drive a wedge in this relationship. At a minimum, Mr. Knox could have

- Confirmed that he understood that Mr. Gottlieb represented Mr. Medunjanin and that he, Mr. Knox, had agreed not to question Mr. Medunjanin outside the presence of counsel;

- Confirmed – or denied – that during their conversation following Mr. Medunjanin's car crash, he and Agent Azad decided to circumvent Mr. Knox's promise to Mr. Gottlieb that Mr. Medunjanin would not be questioned outside the presence of counsel;

- Explained why the government did not notify Mr. Gottlieb that Mr. Medunjanin had been arrested on January 7, 2010;

- Explained why he failed to return Mr. Gottlieb's numerous phone calls to him on January 7 and 8, 2010; and

- Explained his repeatedly refusing to inform Mr. Gottlieb of Mr. Medunjanin's whereabouts during their conversations on January 8, 2010.

(GA5-6.)

The cases the government relies on in arguing that the District Court did not abuse its discretion are inapposite. Indeed, Claudio v. Scully, 982 F.2d 798 (2d Cir. 1992), confirms that Mr. Medunjanin should have been allowed to call Mr. Knox as a witness. In Claudio, this Court held that it was not error for the state court to deny a defendant's request to call then Queens District Attorney John J. Santucci as a witness regarding a conversation between the defendant and the District Attorney. Because the defendant was allowed to elicit testimony from an Assistant District Attorney who was present during this conversation, this Court held that the District Attorney's testimony would have been "neither material nor vital to his defense." Id. at 806. Similarly, in United States v. Caming, 968 F.2d 232, 238 (2d Cir. 1992), this Court held that a District Court's quashing of a subpoena issued by the defendant to an attorney was not an abuse of discretion after the subpoenaed attorney had informed the court that she had no knowledge regarding the areas of examination proposed by the defendant.

16

Here, no similar substitute for Mr. Knox's testimony was provided, and Mr. Knox was the key individual who would have been able to testify regarding the issues described above. These areas of examination would not have been collateral to Mr. Medunjanin's defense. Cf. United States v. Scopo, 861 F.2d 339, 345 (2d Cir. 1988). Rather, Mr. Knox's testimony was directly relevant to one of the key issues in Mr. Medunjanin's motion to suppress – that the government unconstitutionally interfered with his relationship with his attorney. See United States v. Stein, 435 F.Supp.2d 330, 336 (S.D.N.Y. 2006) (holding that the government had interfered with the defendants' right to due process and right to counsel after "[h]aving heard testimony from KPMG's general counsel, some of its outside lawyers, and government prosecutors[.]") (emphasis added); United States v. Koerber, No. 2:09-CR-00302, 2013 WL 4434215, at *23 (D. Utah Aug. 15, 2013) (suppressing defendant's statements – after hearing testimony from numerous witnesses, including prosecutors – because government's ex parte and non-custodial questioning of defendant, knowing he was represented by counsel, violated Utah's no-contact rule, thereby depriving the defendant of his right to due process under the Fifth Amendment).

17

By denying Mr. Medunjanin's request to call Assistant United States Attorney Knox as a witness, the District Court deprived Mr. Medunjanin of the right to present a defense in violation of his rights under the Fifth and Sixth Amendments. This was an abuse of discretion.

## CONCLUSION

For all of the reasons stated herein and in Mr. Medunjanin's principal brief, this Court should vacate Mr. Medunjanin's conviction and remand to the District Court for retrial with instructions to suppress the statements Mr. Medunjanin made to law enforcement during custodial interrogation on January 7 and 8, 2010.

Dated:    December 3, 2013
          New York, New York

```
_____/s/_____
```
         Robert C. Gottlieb
         Stephanie M. Carvlin
         Justin Heinrich
         Counsel for Appellant
         Adis Medunjanin
         111 Broadway, Suite 701
         New York, New York 10006
         212-566-7766

### Certificate of Compliance with Rule 32(a)

1.  This 3381-word brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in plain, Roman style, with a monospaced typeface of 10.5 characters per inch (Courier New), using Word 2010.


_____/s/_____
Stephanie M. Carvlin
Attorney for Appellant Adis Medunjanin
Dated: December 3, 2013

I